DAVID WEINTRAUB, SBN 73841
**BEESON, TAYER & BODINE, APC**
1404 Franklin Street, 5th Floor
Oakland, CA  94612-3208
Telephone:    (510) 625-9700
Facsimile:    (510) 625-8275
Email:        SSandford-Smith@beesontayer.com

Attorneys for Plaintiff
EVELYN FRANCISCO

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN FRANCISCO,<br><br>                    Plaintiff,<br><br>        v.<br><br>OAKLAND UNIFIED SCHOOL DISTRICT,<br><br>                    Defendant. | Case No. C 10-04992 MEJ<br><br>**PETITIONER'S REPLY BRIEF**<br><br>Courtroom:        Courtroom B<br>Judge:            Maria-Elena James<br>Complaint Filed:  November 4, 2010 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ...................................................................................................................... 1

    A.    Writ Relief Is Appropriate, Because The District Has A Ministerial Duty To Execute Such Forms As Necessary To Maintain Petitioner In Her Position As A Permanent, Certificated Teacher. ................................................................................. 1

        1.    The Oakland Unified School District has an implied duty to do what is necessary to continue Ms. Francisco in her position as a permanent, certificated employee of the District. ............................................................ 2

        2.    The District fails to cite to authority to support its position that it has limitless discretion to determine whether to sign off on Petitioner's application for her H-1B Visa renewal application......................................... 5

    B.    The Mandates Of The Education Code Do Not Conflict With Federal Immigration Law............................................................................................................. 6

        1.    Petitioner's claims under the Education Code are not preempted by Federal Immigration Law............................................................................. 6

        2.    Consistent with Federal Immigration Law and the California Education Code, he District made representations to the Federal Government that it intended Ms. Francisco to be a permanent employee with permanent residency. ............................................................ 9

    C.    The District Would Not Be Violating The Labor Conditions Application By Signing Off On Petitioner's Visa Renewal. ................................................................. 9

    D.    The District's Practice Of Refusing To Apply The Provisions Of the Education Code To Holders Of H-1B Visas Discriminates Against Those Employees On The Basis Of Their National Origin. ............................................... 10

    E.    The "Working Conditions" Attestation Of The LCA Requires The District To Treat All Workers Equally, And Does Not Allow It To Refuse To Apply The Education Code's Mandates To Workers on H-1B Visas........................................ 11

    F.    The District Should Be Estopped From Declining To Sign Off On Petitioner's Application For A Renewal Of Her H-1B Visa ....................................................... 12

    G.    The District's Assertion That Petitioner Has Not Been Terminated, And That This Matter Is Not Ripe For Consideration, Is Disingenuous................................. 13

III. CONCLUSION ................................................................................................................ 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Granite State Ins. Co. v. Smart Modular Technologies,* 76 F.3d 1023 (9th Cir. 1996) ....................... 12

*Hines v. Davidowitz,* 312 U.S. 52, 67 (1941) ................................................................................. 6

*In re Cellphone Fee Termination Cases,* 193 Cal.App.4th 298, 309-310 (2011) ............................... 6

*Incalza v. Fendi North America, Inc.,* 479 F.3d 1005 (9th Cir. 2007) .................................................. 8

*Matteson v. State Board of Education,* 57 Cal.App.2d 991 (1943) ...................................................... 3

*Raven v. Oakland Unified School District*, 213 Cal.App.3d 1347 (1989) ...................................... 3, 14

*Welch v. Oakland Unified School District,* 91 Cal.App.4th 1421 (2001) ........................................... 13

*Wyeth v. Levine,* 129 S.Ct. 1187, 1194-1195 (2009). ..................................................................... 6, 8

**Statutes**

20 C.F.R. § 655.738(c) ........................................................................................................................ 4

20 C.F.R. § 655.739 ............................................................................................................................ 4

Cal. Ed. Code § 49406 ........................................................................................................................ 2

Cal. Ed. Code §§ 44420, 44932 and 44933 ....................................................................................... 14

Cal. Ed. Code §§ 44932-44934, 44936, 44938, 44944, 44949, 44955 and 44956 ......................... 2, 3

Code of Federal Regulations (8 C.F.R. § 214.2 (h)(1)(i)) .................................................................. 5

Immigration and Nationality Act ...................................................................................................... 13

INA Section 274A (a)(2) ................................................................................................................... 14

United States Constitution (8 U.S.C. § 1324(a)(2)) .......................................................................... 14

## I. INTRODUCTION

The Oakland Unified School District presumes that federal law, specifically the statutes concerning immigration, somehow give it the unbridled authority to deny state statutorily guaranteed rights of due process to immigrant employees while conceding that these rights are applicable to all other employees. Such construction is both unlawful and antithetical to our core values.

In general, employers have the right to determine whether they want to cooperate in an immigrant employee's request for an extension of their H-1B visa. However, to the degree that other federal and state law do not conflict with the underlying purpose of the immigration statutes, the employer, in this case the Oakland Unified School District, is still required to comply with state law. The District cannot use the technicalities of immigration procedures to assist them in violating other important public policies set forth in state statutes, including California's Education Code.

## II. ARGUMENT

### A. Writ Relief Is Appropriate, Because The District Has A Ministerial Duty To Execute Such Forms As Necessary To Maintain Petitioner In Her Position As A Permanent, Certificated Teacher.

In its Opposition, the District argues that writ relief is not appropriate because there are no statutes that expressly require school districts to sign off on H-1B Visa renewal applications. (DKT# 16, District's Opposition to Petitioner Francisco's Petition for Alternative Writ of Mandate Prohibition, or Other Extraordinary Relief and Application for Stay (hereinafter "Opposition"), p. 6:7-20.) The plain fact is that without their signature on the extension application, Ms. Francisco will not be able to reside in the United States and will be terminated from her job. Because not signing the application will effectuate Petitioner's termination, the failure to sign is, in fact, a circumvention of her rights as a tenured permanent[1] teacher under California's Education Code.

The Education Code is replete with specific statutes that require school districts to maintain permanent teachers in their employment unless school districts comply with very specific due process provisions for any termination. Cal. Ed. Code §§ 44932-44934, 44936, 44938, 44944, 44949, 44955

---

[1] "Permanent" is the term used in the California Education Code for what is commonly referred to as "tenure." The District decided to offer permanent status to Ms. Francisco when she passed her probationary period after her first two years. *See* Cal. Ed. Code § 44929.21(b).

and 44956. By failing to sign off on Ms. Francisco's H-1B Visa application, the District is violating those statutes.

**1.    The Oakland Unified School District has an implied duty to do what is necessary to continue Ms. Francisco in her position as a permanent, certificated employee of the District.**

In their Opposition, the District was unable to explain why it believes the Education Code does not create certain implied duties on the part of school districts that have the effect of retaining their employees, and not depriving them of the due process. The example Petitioner initially raised was that even though there is no specific requirement in the Education Code for how tuberculosis tests are to be filed and retained, if the district did not set up a system to file and retain such documents it might result in the loss of employment of a teacher otherwise entitled to their position. In their Opposition, the district argues the tuberculosis example is unfounded because the Education Code actually clearly delineates such responsibilities. (DKT#16, Opposition p. 11:5-12.) In fact, the provision in Education Code section 49406[2] which the District claims "expressly addresses how tuberculosis testing results .. are to be maintained…" (DKT#16, Opposition p. 11:5-12) does no such thing. Cal. Ed. Code § 49406. The provision actually says the teacher is responsible for filing their results. Cal. Ed. Code § 49406. As teachers do not "file" anything,[3] the Code implies that the school districts have a duty to provide a mechanism and or person for the actual filing. The District would be prohibited from arguing that a teacher's job should terminate because that teacher had not "filed" the tuberculosis test results if there was either no place to file the results or no clerk to do it for them. The same is true for other required forms such as fingerprinting forms and those that document teachers' work hours and pay entitlements. These are all implied duties.

As noted, the Education Code is replete with other implied duties. For instance, there is an implied duty on the part of a school district to assist permanent teachers with the renewal of their credentials, especially if the failure to provide such assistance results in termination arising from the

---

[2] In Petitioner's initial pleadings, the citation to Education Code section 49406 transposed the 4 and the 9. Petitioner apologizes for any inconvenience that caused the Court.

[3] A teacher may go to the Human Resources Department and ask that a clerk or other district employee perform the ministerial duty of filing, but the teacher does not actually "file" anything.

teacher not possessing a credential. *Matteson v. State Board of Education,* 57 Cal.App.2d 991 (1943). The Court in *Matteson* held that a district could not circumvent the due process rights of a tenured teacher to a hearing to determine whether they were fit to teach simply because a technicality (in this case the failure to indicate the teacher had "successful" experience teaching for at least five months to the Commission on Teacher Credentialing ("CTC") during the renewal process) allowed the district's non-cooperation to result in the non-renewal of her credential by the CTC. The Court explained:

> [I]t is quite obvious that it was the legislative intent that no teacher and especially one holding permanent tenure should be deprived of his credential to teach in any of the public schools in this state without some sort of charges being filed against him, and without being afforded the right of trial thereon, so that he may defend himself against such charges. *Id*. at 998.

Similarly, in *Raven v. Oakland Unified School District*, 213 Cal.App.3d 1347 (1989), the Appellate Court (citing to *Matteson*, *supra*) held that the school district could not refuse to reinstate a school teacher because the district's staff psychiatrist did not believe that the teacher was mentally competent to return, without providing her a competency hearing *Id.* at 1357. In so holding, the Court stated, "In effect, the district circumvented the statutory procedures by requiring final approval for return to duty from its staff psychiatrist and by refusing to take formal action against Raven. The district may not deprive a tenured teacher of her employment rights indirectly when it could not do so directly." *Id*. at 1356.

The same reasoning that is set forth in *Matteson* and *Raven* is applicable to the case at hand. Oakland Unified School District has a duty to continue Petitioner Francisco in her employment as a permanent, certificated employee of the District. They cannot indirectly deprive Petitioner of her employment rights by refusing to sign off on her H-1B application. Although the current Education Code has undergone several revisions since *Matteson* was decided, the dismissal provisions are still similar. No permanent teacher may be dismissed from his or her employment unless and until: (1) a school district brings charges alleging one (or more) of the enumerated bases for dismissal against that teacher; (2) there is a hearing before a Commission on Professional Competence, and; (3) the Commission on Professional Competence determines that the teacher should be dismissed from his or her employment. Cal. Ed. Code §§ 44932, 44939 and 44944. No permanent teacher may be laid off

3
**PETITIONER'S REPLY BRIEF**                                                202838.doc
Case No. C 10-04992 MEJ

without a hearing to determine whether the district has a need for the layoff and has complied with all the requirements set forth in Education Code section 44955. The District's refusal to sign the application effectively circumvents the entirety of Ms. Francisco's rights to due process and embodied in these provisions of the Education Code.

The District argues that it has the discretion to determine whether or not to sponsor the renewal of Petitioner's H-1B Visa, but fails to cite any statute or case supporting their contention. The District argues the General Instructions for the Labor Condition Application (hereinafter "LCA General Instructions") support its position. (DKT#16, Opposition p. 7:14-8:8.) However, the attestations required in the Labor Condition Application are no more vexing than the verification at issue in *Matteson*, requiring the school district to verify five months of successful teaching experience. Simply verifying certain conditions pertaining to wages, working conditions, the existence of a strike and providing notice to the employees and/or their Union, does not rise to the level of discretionary decision-making that can disregard established statutory provisions providing due process.

In contrast, if the District was an H-1B "dependent employer" (an employer who relies on individuals possessing H-1B visas for more than 15% of its workforce (20 C.F.R. § 655.736)), or had been found to have committed a willful violation or a misrepresentation of a material fact during the five year period preceding the application, the District would also be required to, "take good faith steps meeting industry-wide standards to recruit U.S. workers for the job for which the nonimmigrant is sought, offering compensation at least as great as required to be offered to the H-1B immigrant" and verify that, "[t]he employer will (has) offer(ed) the job to any U.S. worker who (has) applied and is equally or better qualified than the H-1B nonimmigrant." (DKT#16, Attachment 2, District's Request for Judicial Notice in Support of Opposition (hereinafter "RJN"), Exhibit A, p. 12); 20 C.F.R. § 655.739. The District would also be required to certify that the H-1B worker would not displace any similarly employed U.S. worker within the period beginning 90 days before and ending 90 days after the date of filing a petition for an H-1B worker. 20 C.F.R. § 655.738(c). Respondent

1  District is not an H-1B "dependent employer,"[4] nor a willful violator, and therefore does not have to
2  guarantee that an H-1B employee will not displace a U.S. worker or make any sort of effort to hire
3  U.S. workers. Such a contrast between Respondent District's requirements, and those of a "dependent
4  employer" or "willful violator," demonstrate the ministerial nature involved with signing off on the
5  verifications to renew Ms. Francisco's H-1B visa status.  The fact that the application specifically
6  requires a representation of a good faith effort to offer the visa holder's job to citizens first in the
7  section applicable to "dependent employers" but is silent for non "dependent employers" strongly
8  suggests no such requirement exists.

### 2. The District fails to cite to authority to support its position that it has limitless discretion to determine whether to sign off on Petitioner's application for her H-1B Visa renewal application.

The District claims it has the discretion, without limitation, to sign off on applications for extensions of visas and that federal law mandates such discretion. In fact, the authority the District cites (8 C.F.R. § 214.2 (h)(1)(i)), does not address situations where an employee is seeking a renewal of their H-1B Visa. Instead, Section 214.2(h)(1)(i) specifically addresses the discretion of an employer to choose to petition to have an immigrant "*come* to the United States." 8 C.F.R. § 214.2 (h)(1)(i) (emphasis added).  There is no authority cited which vests in the employer of an existing H-1B Visa holder the unbridled discretion to disregard state law and regulations, and due process entitlements, in its decision to as to whether to sign off on a renewal of such a visa.  The District's other "authority" appears to be citation to selected language from the application forms (in a "Labor Condition Application") including a quote from one line on the form which says that when an employer "desires" to fill out a LCA, they must file certain other forms. (DKT#16, Opposition p. 7:14-18.) To cite this as authority for their contention is reflection of the weakness of their contention that such authority exists. .

The District asserts that their determination as to whether to sponsor temporary work visas on behalf of individuals involves substantial decisions and judgment, and is therefore not a ministerial duty. (DKT#16, Opposition p. 3:13-21.) The factors the District claims to look at include, "the

---

[4] See "Exhibit C" attached to the Supplemental Declaration of David Weintraub, I-29 Petition for a Nonimmigrant Worker and H-1b Data Collection and Filing Fee Exemption Supplement, p. 13.

**PETITIONER'S REPLY BRIEF**
Case No. C 10-04992 MEJ

5

202838.doc

employee's work performance and evaluations, attendance, credentials, 'highly-qualified' status; the recommendation of the employee's supervisors; whether the employee is teaching in a high need or specialized area; and whether U.S. citizens' or permanent resident aliens' employment will be terminated as a result of continued sponsorship." (DKT#16, Opposition p. 3:14-17.) Petitioner does not dispute that any of these factors can and should be applied to judge whether a school district wished to retain <u>any</u> teacher. It simply cannot use procedural technicalities of a visa holder's status to avoid providing the due process and hearings to which permanent employees such as Petitioner are entitled under the Education Code if they decide a visa holder should be terminated.

**B.     The Mandates Of The Education Code Do Not Conflict With Federal Immigration Law.**

**1.     Petitioner's claims under the Education Code are not preempted by Federal Immigration Law.**

There are three different ways state law may be preempted by federal law: (1) where Congress expressly states an intent to preempt state law; (2) where preemption can be implied where federal law demonstrates an intent to "occupy the field"; or (3) where state law conflicts with federal law, such that it is impossible to comply with both state and federal law, or such that the state law stands as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941); *In re Cellphone Fee Termination Cases,* 193 Cal.App.4th 298, 309-310 (2011). Further, there is a general presumption against preemption of state law claims. *Wyeth v. Levine,* 129 S.Ct. 1187, 1194-1195 (2009).

The District cites to *Hines v. Davidowitz,* 312 U.S. 52 (1941), to support its argument that, "a state statute is preempted even where it does not directly regulate immigration issues." (DKT#16, Opposition p. 17:2-8) However, in *Hines* the Supreme Court stated that the ultimate test is whether the "[l]aw stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines, supra,* 312 U.S. at 67. In the matter at hand, providing holders of H-1B visas the due process protections under the Education Code is not an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

**PETITIONER'S REPLY BRIEF**
Case No. C 10-04992 MEJ

6

202838.doc

The District argues that the federal government has the exclusive right to regulate immigration, and therefore the District is not bound to provide Petitioner with her state-mandated due process rights. (DKT#16, Opposition p. 16:24-17:8.) The District misstates Petitioner's argument when it asserts that Petitioner is claiming that the due process provisions in the Education Code attempt to "control which immigrants may remain in the country, under what circumstances they may be employed, and under what conditions they may remain in the country." (DKT#16, Opposition p. 16:26-17:2.) Petitioner makes no such argument.  Petitioner's argument is that the seniority and tenure provisions in the Education Code, benefits that U.S. workers are entitled to, should apply equally to H-1B workers.  The Code of Federal Regulations, in its "working conditions" attestations, requires the District to provide working conditions to its H-1B workers identical to those of its U.S. workers. 20 C.F.R. § 655.732(a) ("Working conditions include matters such as hours, shifts, vacation periods, and benefits such as seniority-based preferences for training programs and work schedules."). Moreover, Respondent failed to cite to any authority (because no such authority exists) stating that by enacting the provisions pertaining to H-1B visas, Congress was intending to completely occupy the field to the exclusion of other laws such as employment and anti-discrimination laws. If Respondent's argument is followed to its logical conclusion, the District would be allowed to refuse to sign off on an employee's H-1B visa renewal for racially discriminatory reasons, and that employee would not have any statutory remedies for reinstatement.

In providing for the distribution of H-1B visas, Congress was not simply looking out for the best interests of the employers, but also the interests of those employees applying for such visas as well as other employees who are citizens. Such intent can be found in the "working conditions" attestations the employer is required to make, including that the H-1B worker be paid wages that are the higher of the actual wage level paid by the employer to all other individuals with similar qualifications and experience or the prevailing wage and that the H-1B workers will be afforded working conditions on the same basis, and in accordance with the same criteria, as offered to U.S. workers. *See* 20 C.F.R. §§ 655.732. Providing Petitioner with due process protections in the Education Code simply furthers the Congressional goals of ensuring that H-1B visa workers are treated similarly, and afforded the same benefits, including seniority rights and tenure, as their U.S.

7

**PETITIONER'S REPLY BRIEF**  202838.doc
Case No. C 10-04992 MEJ

worker counterparts. Such a construction effectuates the Congressional intent as well as the general presumption against preemption of state law claims. *Wyeth, supra,* 129 S.Ct. at 1194-1195.

The Ninth Circuit Court of Appeals has recognized that state law claims and remedies for wrongful termination of an individual because of his or her visa problems are not preempted by federal law. *Incalza v. Fendi North America, Inc.,* 479 F.3d 1005 (9th Cir. 2007). In *Incalza*, the plaintiff, Mr. Incalza, was a citizen of Italy who was encouraged to come to the United States to work for Fendi. At the time of his recruitment, Incalza was informed that his employment would be secure so long as he continued to perform well. *Id.* at 1007-1008. The employer assisted Incalza with securing his E-1 visa to work in the United States. *Id.* When his employer was purchased by French nationals, Incalza's E-1 visa (and the E-1 visa of another employee, Graziani) was no longer valid. *Id.* The employer applied for an H-1B visa for Graziani, but did not do so for Incalza. *Id.* at 1008. The employer subsequently fired Incalza by telling him, inaccurately, that nothing could be done to remedy his visa problems. *Id.* Incalza brought an action in California Superior Court, alleging that he was wrongfully terminated in violation of an implied contract that he would be fired only for good cause and because of his Italian heritage in violation of the Fair Employment and Housing Act. *Id.* The employer removed the case to federal court, and argued that it was compelled to terminate Incalza when his visa expired, and to the extent California law required a different result, it was preempted. *Id.* at 1009. At trial, the jury found for Incalza on the implied contract claim, and awarded him $1,088,440. *Id.*

In upholding the jury's decision, the Ninth Circuit focused its analysis on whether there was a conflict preemption that would preclude Incalza from obtaining relief. *Id.* at 1009-1013. In finding that no such conflict existed, the Court stated:

> There is no conflict in the case before us for a narrower reason. Here, not only was Incalza not discharged because of his unauthorized employment status, but Fendi could lawfully have taken action other than discharge, and been in compliance with IRCA [Immigration Reform and Control Act]. *That Fendi itself recognized that discharge was not required is evidenced by its decision to continue to employ Graziani while obtaining an H-1B visa for him. Id.* at 1010 (emphasis added).

The Court also discussed the fact that California law provides remedies to workers, both documented and undocumented, who are wrongfully terminated, and also that in enacting the Immigration Reform and Control Act, Congress' secondary purpose was, "[p]rotecting the rights of lawful alien workers." *Id*. at 1009-1012. Requiring the District to follow the mandates of the Education Code, by signing off on Petitioner's application for her H-1B visa renewal, is consistent with both state law and the Congressional purpose of protecting lawful alien workers.

> **2.      Consistent with Federal Immigration Law and the California Education Code, he District made representations to the Federal Government that it intended Ms. Francisco to be a permanent employee with permanent residency.**

Throughout its Opposition, the District makes reference to the "temporary" nature of Petitioner's H-1B visa. (DKT#16, Opposition, pp. 3-12, 15, 17-18.) The District refers to provisions in the LCA General Instructions to bolster its argument regarding the temporary nature of an H-1B visa. (DKT#16, p. 7:3-22.) However, what the District fails to mention is that in 2008, the District filed the Form I-140, Immigrant Petition for Alien Worker (commonly referred to as a "green card" application) for Petitioner, wherein it made representations to the Federal Government that Ms. Francisco was seeking permanent residence in the United States, and that the District had offered her a permanent employment position. (Supplemental Declaration of David Weintraub ("Supp. Weintraub Decl."), ¶ 4; p. 2:3-7 and attached Exhibit E, p. 2, filed herewith.)

The District's sponsorship of the green card application on behalf of Petitioner, and the representations made therein, including the offer of permanent employment, all demonstrate that Petitioner and the District envisioned this to be a permanent situation. Requiring the District to sign off on Petitioner's H-1B renewal application is consistent with the California Education Code, and does not conflict with the purposes of Federal Immigration law, because Petitioner was not merely working as a "temporary" worker, as demonstrated by the representations made by the District in the Form I-140.

> **C.      The District Would Not Be Violating The Labor Conditions Application By Signing Off On Petitioner's Visa Renewal.**

Petitioner agrees that the District (or any employer) must not make misrepresentations in signing off on applications for visa extensions. In this case, signing off on the I-29 Petition for Nonimmigrant Worker and the Labor Condition Application (hereinafter "LCA"), and the letter that accompanies the Petition and LCA, would not cause the District to make any misrepresentations.

The District makes no contention that the representations made in the I-29 Petition or the cover letter would in any way be inaccurate. In fact the District through their Credentials Supervisor, Barbara Gee, already signed off on these very same representations after the filing of this action. (Supp. Weintraub Decl., ¶¶ 2,3 ; p. 1:22-2: 2, and attached Exhibits C and D, filed herewith.) The only difference between the Petition, LCA and letter that they signed and they one Petitioner asks this Court to order them to sign, concerns the duration of Petitioner's visa status.

Further, the District has conceded that each representation they would have to make in the LCA, with one exception[5] would be true. (DKT#13, Parties' Joint Stipulation to Pertinent Facts (hereinafter "Joint Stipulation") ¶ 12, p. 3:5-19.)

**D.      The District's Practice Of Refusing To Apply The Provisions Of the Education Code To Holders Of H-1B Visas Discriminates Against Those Employees On The Basis Of Their National Origin.**

The Education Code sets forth procedures for laying off and dismissing permanent employees. However, in their Opposition, the District asserts that it can make its decisions based on Ms. Francisco's performance or how many junior teachers (or applicants) they currently have who are qualified for her job, all in clear derogation of the Education Code's lay off provision which provides layoff are by seniority.  Cal. Ed. Code §44955. The only argument it can make as to why it is able to discriminate in this manner against employees who hold visas is "just because we can." But, the District's contentions that it has a right to determine whether to retain her because of her performance or because there are other math teachers who happen to be citizens who could take her job clearly flies in the face of her rights under the Education Code and is a pretext for discrimination

---

[5] The only representation they appear to balk at is one which states that there is no strike or lock out at this time. Their hesitation is baffling as there is no strike or lock out. In their Opposition, they refer to a one-day strike last year, but make no argument as to why this historical fact would in any way impact their signature on the LCA.  (DKT#16, Opposition p. 4:15-5:5.)

on the basis of her national origin. Moreover, there are no other teachers qualified to teach the Advanced Placement Statistics course, which Petitioner had been teaching, at Oakland Technical High School. (Supplemental Declaration of Evelyn Francisco, ¶¶ 1 and 2, p. 1:20-26.)  But for her status as a non-citizen from another country, it is undisputed that she would have the same due process rights as all other tenured teachers. (DKT#13, Joint Stipulation ¶ 2, p. 2:1-2, wherein the District acknowledges Petitioner's rights to the due process provisions of the Education Code.) The suggestion of the District that they treat other immigrant teachers similarly (i.e.  discriminatorily and illegally) to Francisco only establishes the need for broad injunctive relief.. (DKT#16, Attachment #1, Declaration of Barbara Gee in Opposition to Petitioner's Writ of Mandate ("Gee Declaration") ¶ 8; p. 4; DKT#16, Opposition p. 10:17-18.)

      **E.      The "Working Conditions" Attestation Of The LCA Requires The District To Treat All Workers Equally, And Does Not Allow It To Refuse To Apply The Education Code's Mandates To Workers on H-1B Visas.**

Petitioner, and others similarly situated (other visa-holding teachers in Oakland), are experiencing a double standard in terms of their working conditions at this moment, during the time of their valid H-1B visa status. Other permanent teachers, who are not working under H-1B visas, are offered the protections and due process of  the Education Code. If such teachers take too many days off, or are performing unsatisfactorily, the district has a right to take disciplinary action and the teachers have the right to challenge such allegations. If the district wishes to dismiss these teachers (those not working under H-1B visa status), the teachers have the right to a full-blown hearing with all the due process protections set forth in Education Code sections 44932, 44988, and 44944. By treating immigrant teachers here on H-1B visas to a different standard, whereby they are made aware their employment can be terminated without good cause despite the Education Code and the public policies set forth therein, they are being subjected to different, more anxiety provoking, tenuous and hence, worse working conditions.

The district argues that even if it is not complying with the "working conditions" requirement, "the federal government would be the only one authorized to address the District's alleged non compliance." (DKT#16, Opposition p. 16:16-17.)  It would be incongruous for the court to recognize

that the District's discriminatory practice violates not only the California Education Code due process provisions but also the federal law guaranteeing similar working conditions for immigrant employees as those provided for non-immigrants, and somehow be prohibited from providing a remedy. California writ law provides a remedy and the federal court can apply its concurrent jurisdiction and issue orders that a California court under California law would apply.

### F. The District Should Be Estopped From Declining To Sign Off On Petitioner's Application For A Renewal Of Her H-1B Visa

Assuming, *arguendo,* that the District does have the discretion to determine whether to sign off on Petitioner's H-1B visa renewal application, the District should be equitably estopped from declining to sign off on the application. To justify a finding of equitable estoppel in this matter, Petitioner must show: (1) the District knew that it did not intend to provide Petitioner with the rights of a permanent teacher set forth in the Education Code; (2) the District intended that their statements would cause Petitioner to leave the Philippines to come to work for the District, or Petitioner has the right to believe that is what the District intended; (3) she was unaware that the District did not intend to provide her with the rights of a permanent teacher; and (4) she relied on the District's assertions to her detriment. *Granite State Ins. Co. v. Smart Modular Technologies,* 76 F.3d 1023 (9th Cir. 1996). In this case, Petitioner has met the above requirements, and the District should be estopped from declining to sign off on her visa renewal application.

In Petitioner's declaration, filed with the Petition for Writ of Mandate, she explained that in September 2001, she was recruited to come teach in the Oakland Unified School District by Mike Helms, an employee of the Human Resources Department for the District. (DKT#1, NOR, Francisco Declaration ¶ 2, pp. 1:23-2:1.) In his recruitment efforts, Mr. Helms told Petitioner that if she passed her probationary period after the first two years, she would be guaranteed continued employment a permanent employee of the District. (DKT#1, NOR, Francisco Declaration ¶ 2, pp. 1:23-2:1.) This representation encouraged Petitioner to leave the Philippines and begin her employment with the District. Now, the District is reneging on its promise to treat Petitioner as a permanent employee, and

12

**PETITIONER'S REPLY BRIEF**
Case No. C 10-04992 MEJ

202838.doc

she will be forced to leave the country. The District should not be allowed the benefit of its misrepresentations to Petitioner.

In *Welch v. Oakland Unified School District,* 91 Cal.App.4th 1421 (2001), Oakland Unified School District attempted to deny probationary status to one of its employees by asserting that she was an "intern" and not a "district intern" under the relevant Education Code provisions. *Id*. at 1427. In finding that the District was required to classify the teacher as probationary and a "district intern," the Court focused on the fact that the District had accepted money from the Commission on Teacher Credentialing based on representations to the Commission that the teacher was a "district intern," and stated. "'A court of equity [or law] does not allow one to take advantage of his own fraud and will refuse to lend its aid to assist in enforcing a fraudulent imposition upon government, public, or private individuals' [citations omitted]." *Id*. at 1428-1429.

In the case at hand, the District knowingly made misrepresentations to Petitioner to induce her to come to the United States and teach in the District. The District obtained the benefit of Petitioner's services because of its misrepresentations to her, and should not be allowed to back out on their promise to treat her as a permanent employee of the District. Accordingly, even if the District does have the discretion to decide whether to sign off on Petitioner's visa renewal application, equity dictates that they be required to do so.

**G.    The District's Assertion That Petitioner Has Not Been Terminated, And That This Matter Is Not Ripe For Consideration, Is Disingenuous.**

The District argues that this matter is not ripe because Petitioner has not been deported or fired yet. They want the court to wait until irreparable damage is done. The District is asking the Court to be a participant in its egregious conduct by turning the Court's attention away from the inevitable irreparable damage the District clearly aims to achieve. Though the District denies that their decision to not sign off on the application for extension of Francisco's H-1B status effectuates the termination of her employment without the due process guaranteed to all other similarly situated non-immigrant teachers, the denial is disingenuous. As the district itself points out (DKT#16, Opposition p. 13: 5-14), the Immigration and Nationality Act (hereinafter "INA") makes it unlawful for an employer to continue the employment of an alien who is unauthorized under the INA Section

274A (a)(2) and the United States Constitution (8 U.S.C. § 1324(a)(2)). Further, under California's Education Code any teacher can be (and would be) terminated, as well as lose their credential for abandoning their job, for unprofessional conduct (abandoning one's job) and failing to comply with the reasonable rules and regulations promulgated by the State and local school district. *See* Cal. Ed. Code §§ 44420, 44932 and 44933.

In addition to ignoring the obvious outcome of their denial to sign off on Petitioner's H-1B Visa application, the District's argument that the case is not ripe because Petitioner has not yet been deported or terminated from her position was rejected in *Raven*, *supra*, 213 Cal.App.3d at 1355-1356. In *Raven*, the school district asserted that the Education Code did not apply to Raven because she had not been formally suspended, terminated or placed on mandatory sick leave. *Id*. at 1355. As set forth above, the Court was not persuaded by the district's argument, and instead, admonished the district for attempting to circumvent the mandates of the Education Code by indirectly terminating Raven. *Id*. at 1356. The Oakland Unified School District's refusal to sign off on Petitioner's H-1B Visa application has the effect of terminating her employment with the District, and forcing her to leave the country, both of which constitute irreparable injury.

### III. CONCLUSION

The District's attempt to circumvent the due process provisions of California's Education Code by effectuating the deportation of Ms. Francisco should not be tolerated. The relief requested should be granted.

Dated: June 9, 2011                                  BEESON, TAYER & BODINE, APC


By:      /s/ David Weintraub
         DAVID WEINTRAUB
         Attorneys for EVELYN FRANCISCO